[Cite as *Glover v. Canann*, 2021-Ohio-2641.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

SYDNEY GLOVER,

                Plaintiff-Appellant,

- v -

REBECCA LYNN CANANN,

                Defendant-Appellee.

CASE NO. 2020-T-0081

Civil Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2018 JP 00059

---

## O P I N I O N

Decided: August 2, 2021
Judgment: Affirmed

---

*John H. Chaney, III,* Daniel Daniluk LLC, 1129 Niles-Cortland Road, S.E., Warren, OH 44484 (For Plaintiff-Appellant).

*Robert L. Root, III*, 175 Franklin Street, S.E., Warren, OH 44481 (For Defendant-Appellee).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Sydney Glover ("Father"), appeals the judgment allocating parental rights and responsibilities and ordering him to pay child support. We affirm.

{¶2} Father and appellee, Rebecca Lynn Canann ("Mother"), had a brief relationship resulting in the birth of one child on 5/13/2018. Shortly after the child was born, the parties reached an impasse on parenting time, resulting in Father filing a complaint in the trial court. Father also submitted a proposed shared parenting plan

("initial plan"), whereby the parties would enjoy regular parenting time with the child on a week-on/week-off schedule. Thereafter, Mother submitted a proposed parenting plan naming her as residential parent and legal custodian, providing Father with regular parenting time pursuant to the court's standard order, and obligating Father to pay child support.

{¶3} On May 28, 2019, the trial court adopted a magistrate's decision of the same date ordering that Father pay child support in the amount of $396.31 per month. Father objected to the magistrate's decision, and the trial court sustained the objection and remanded the matter to the magistrate for hearing.

{¶4} The matter proceeded to evidentiary hearing before the magistrate on the issues of child support and the allocation of parental rights and responsibilities. Toward the conclusion of the hearing, the magistrate indicated that he would permit the parties to submit updated proposed shared parenting plans:

> THE COURT: I'm going to allow you both to rethink your proposed shared parenting plans based on the evidence here, if you want to. Okay? And submit new ones. Because these are old. These are from the beginning before all of this happened.
>
> [FATHER'S ATTORNEY]: Correct, exactly.
>
> THE COURT: And this will give you time maybe to implement some things and maybe make it more yours, each of yours. And I have an opportunity to draw from both of them, you know, reviewing them, I can draw from both of them and try to get the best of both of them out. * * *

{¶5} Both parties submitted proposed modified plans. In Father's modified shared parenting plan, he proposed that he enjoy regular parenting time with the child three overnights per week, from Thursday at 10:00 a.m. until Sunday at 2:00 p.m., as well

2

as week-on/week-off parenting time during the summer, and that child support be set at $0. On November 21, 2019, the magistrate issued an order finding Father's modified shared parenting plan to be in the child's best interest, except to the extent that it included the deviation of child support to $0. The magistrate ordered that the modified plan be amended to provide for child support in the amount of $245.74 per month. The order required that the parties implement the modification to the shared parenting plan and submit the amended shared parenting plan to the court for review. Mother filed an "objection and motion to stay magistrate's decision," in which she challenged the magistrate's November 21, 2019 order, and Father filed a motion to set aside the same order, which he represented was "solely due to the filing of Objections by Mother."

{¶6}   On March 25, 2020, the trial court issued a journal entry denying both Father's motion to set aside and Mother's objection, which it treated as a motion to set aside pursuant to Juv.R. 40(D). However, the court instructed the magistrate to file an order nunc pro tunc to incorporate Father's modified shared parenting plan and to correct a typographical error with respect to the child's birthdate.

{¶7}   Father then attempted to appeal from the March 25, 2020 journal entry. This court dismissed the appeal for lack of jurisdiction because the March 25, 2020 entry did not constitute a final appealable order, as it did "not contain a statement of relief or terminate the action." *Glover v. Canann*, 11th Dist. Trumbull No. 2020-T-0026, 2020-Ohio-4361, ¶ 7.

{¶8}   On September 23, 2020, the magistrate issued a decision, adopted by the trial court on the same date, which incorporated and approved Father's proposed modified shared parenting plan with an amendment of child support, which the magistrate

3

set at $245.74. The magistrate determined that the child support reflected a deviation "due to the Natural Father having the child approximately 44% of the year and the discrepancy of the parties' incomes." Father appeals from the September 23, 2020 entry adopting the magistrate's decision and entering judgment accordingly. He assigns two errors:

{¶9} "[1.] Whether the trial court erred in refusing to adopt and approve Appellant's Shared Parenting Plan (T.d. at 26), when Ohio Revised Code §3109.042(A) requires that Appellant and Appellee stand on equal footing in the allocation of parental rights and responsibilities, and Appellant's Shared Parenting Plan (T.d. at 26) awarded equal parenting time, shared responsibilities, and equal treatment to both Appellant and Appellee in relation to the minor child.

{¶10} "[2.] Whether [the] trial court erred, and abused its discretion, in calculating the child support obligation, when Appellee's entire gross income was not considered, Appellee's income for child support purposes was greater than Appellant's income, and a deviation was correctly awarded for extended time under the Shared Parenting Plan, but was incorrectly applied by the trial court."

{¶11} Initially, we note pursuant to Juv.R. 40(D)(3)(b)(iv), "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Here, neither party filed objections to the magistrate's decision of September 23, 2020. However, due to the peculiar procedural posture of this case, the September 23, 2020 decision appears to have merely

4

Case No. 2020-T-0081

implemented the March 25, 2020 ruling on the motions to set aside the magistrate's order. Therefore, to the extent that Father raised his challenges in his motion to set aside, we conclude that, under the unique facts and circumstances of this case, such challenges were preserved for appeal.

{¶12} In his motion to set aside, Father argued that his initial plan should be approved, specifically the week-on/week-off, equal parenting time schedule, "after seeing the extreme actions taken by Mother to keep Father from having additional parenting time with the minor child including, but not limited to, the request to stay the magistrate's order, and to limit Father's parenting time to only 'six (6) hours a week[.]'" On appeal, however, Father argues that the failure to approve his initial plan was due to the court neglecting to place the parties on equal footing as required by R.C. 3109.042(A), which provides:

> An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation.

{¶13} Father did not make any argument with respect to R.C. 3109.042 in the trial court. Accordingly, having not been raised below, Father has forfeited all argument with respect to R.C. 3109.042(A) except for plain error. Juv.R. 40(D)(3)(b)(iv); *see also Dinardo v. Dinardo*, 11th Dist. Lake No. 2016-L-111, 2017-Ohio-4379, ¶ 17 (pursuant to Civ.R. 53(D)(3)(b)(iv), failure to object on a particular issue forfeits all but a plain error argument on appeal with respect to that issue) and Civ.R. 53(D)(3)(b)(iv) (containing language equivalent to that set forth in Juv.R. 40(D)(3)(b)(iv)).

5

Case No. 2020-T-0081

{¶14} "Plain error in civil cases is defined as error that 'seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *Dinardo* at ¶ 19, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 579 N.E.2d 1099 (1997), syllabus.

> "In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings."

*Dinardo* at ¶ 20, quoting *Goldfuss* at 121.

{¶15} Here, Father has not alleged plain error, and the record is devoid of any indication that the trial court failed to place the parties on equal footing.[1] To the contrary, the court adopted Father's modified parenting time schedule, and, in his filings, Father indicated that his modified shared parenting plan was in the child's best interests, and his motion to set aside was filed only because Mother had challenged the magistrate's order approving Father's modified plan with amendment. Accordingly, Father's first assigned error lacks merit.

{¶16} With respect to Father's second assigned error, he raises two arguments made in his motion to set aside with respect to child support: (1) the child support order contains mathematical errors in computing the deviation due to Father's extended parenting time, and (2) the computation erroneously fails to include in Mother's gross

---

1. Because Father's argument pertains to the court failing to place the parties on equal footing by not adopting his initial plan, we limit our discussion accordingly. Our decision should not be read as expressing any opinion as to the method used by the trial court in amending and adopting Father's modified shared parenting plan. *See* R.C. 3109.04(D)(1)(a)(iii).

6

Case No. 2020-T-0081

income the social security benefits that she receives for providing care for her disabled sister.

{¶17} With respect to the deviation, Father maintains that the court incorrectly calculated his parenting time at 44%, when he instead has possession of the child 46% of the time based upon an hourly calculation. Father then appears to argue that he is entitled to a downward deviation in child support precisely proportionate to the percentage of time that he has possession of the child.

{¶18} However, Father points to no law, and we are aware of no law, requiring a strict deviation reflecting the proportion of parenting time enjoyed by an obligor. To the contrary, pursuant to the statutory guidelines, if an obligor enjoys more than 90 overnight visits with the child per year, the obligor is generally entitled to an automatic *10% deviation*. R.C. 3119.051. If the obligor enjoys more than 147 overnights per year, as Father does here, the guidelines provide that the court will consider a deviation *in addition to* the R.C. 3119.051 deviation. *See* R.C. 3119.231(B). In reviewing whether a deviation is appropriate, the trial court considers whether the calculated amount is inappropriate or unjust and not in the best interests of the child by applying the relevant factors contained in R.C. 3119.23 and, in the case of shared parenting, considering any extraordinary circumstances of the parents pursuant to R.C. 3119.24.

{¶19} Pursuant to the child support worksheet, Father's annual support obligation without deviation was $4964.39 per year. This amount was reduced by the R.C. 3119.051 automatic 10% deviation of $496.44 in lines 19-22 of the worksheet, leaving an adjusted child support obligation of $4467.95 per year, or $372.33 per month. The court then granted the additional R.C. 3119.231(B) deviation on lines 25(a)-(c) of the child support

7

worksheet, reducing Father's support obligation by $126.59 per month. Although Father argues this does not equate to a 46% percent deviation, as set forth above, the guidelines do not require an adjustment equally commensurate with parenting time. Further, the guidelines speak of extended parenting time in terms of "overnight" companionship, and not based upon hourly calculations. When calculated based upon overnight parenting time, Father has the child for approximately 44% of the overnights per year, as stated by the trial court. Moreover, the trial court based the deviation upon both the extended parenting time and the disparity in the parties' income, with Father making $41,000 per year and Mother making $22,929 per year. *See* R.C. 3119.23(C) (extended parenting time is a factor to consider in determining an appropriate deviation) and 3119.23(E) (disparity in income between parties is a factor to consider in determining an appropriate deviation). Father's argument does not account for any reduction in the deviation due to the disparity in the parties' incomes.

{¶20} With respect to Mother's income, Father argues that Mother receives $900 per month to care for her disabled sister who lives with her, and this amount should have been included in Mother's gross income for child support purposes.

{¶21} "Gross income" for purposes of child support

> means, except as excluded in division (C)(12) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are

8

received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. "Gross income" includes income of members of any branch of the United States armed services or national guard, including, amounts representing base pay, basic allowance for quarters, basic allowance for subsistence, supplemental subsistence allowance, cost of living adjustment, specialty pay, variable housing allowance, and pay for training or other types of required drills; self-generated income; and potential cash flow from any source.

R.C. 3119.01 (C)(12). "For a parent who is employed to full capacity," "income" refers to the "gross income *of the parent*[.]" (Emphasis added.) R.C. 3119.01(C)(9)(a).

{¶22} At the hearing, the limited testimony as to Mother's guardianship of her sister indicated that her sister's social security check lists Mother as payee, and Mother uses this money toward her sister's bills, which includes some of their joint living expenses, and Mother does not receive a fee for serving as guardian. Mother's receipt of the social security funds on behalf of her sister does not transform the funds from her sister's to her own. Instead, based upon the testimony, it appears that Mother is a representative payee, and, as such, she has a duty to use those funds for the benefit of her sister. *See* 42 U.S.C.A. 1383 (governing payment procedure and imposing liability on representative payee who misuses funds).

{¶23} Accordingly, the second assigned error lacks merit.

{¶24} The judgment is affirmed.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.

9